# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENISE KRAMER, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>VICE MEDIA LLC<br><br>        Defendant. | NO. 1:22-cv-04915<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Denise Kramer, ("Plaintiff") individually and on behalf of herself and all others similarly situated, complains upon knowledge as to her own acts and upon information and belief as to all other matters against Vice Media LLC as follows:

## SUMMARY OF ALLEGATIONS

1. This is a consumer privacy class action against Vice Media LLC ("Vice") for violating the Video Privacy Protection Act ("VPPA" or "the Act") by disclosing its digital users' identities and video-viewing preferences to Meta Platforms, Inc. ("Meta") without proper consent. Meta owns the popular social media platforms Facebook and Instagram.

2. The VPPA prohibits "video tape service providers," such as Vice, from knowingly disclosing consumers' personally identifiable information ("PII"), including "information which identifies a person as having requested or obtained specific video materials or services from a video tape provider," without the person having expressly given consent in a standalone consent form.

3. Vice, through its website, www.vice.com, collects and shares users' personal information with Meta using a "Meta Pixel." A Metal Pixel is a snippet of programming code that tracks users as they navigate through a website, including what searches they performed and which items they have clicked on or viewed.

4. The Meta Pixel sends information to Meta in a data packet containing PII, such as the users' IP address, name, email, or phone number. Meta then stores this data on its own servers.

5. In this case, by its incorporation of Meta Pixel, Vice shared with Meta PII, including at least the user's Facebook Profile ID ("FID"), and the title of the video that the user watched. A user's Facebook Profile ID is linked to their Facebook profile, which generally

contains a wide range of demographic and other information about the user, including pictures, personal interests, work history, relationship status, and other details. Because the digital subscriber's FID uniquely identifies an individual's Facebook user account, Facebook—or any other ordinary person—can use it to quickly and easily locate, access, and view digital subscribers' corresponding Facebook profile.

6. Vice discloses the user's Facebook Profile ID and viewing content to Meta together in a single, unencrypted transmission, in violation of the VPPA. Because the user's Facebook Profile ID uniquely identifies an individual's Facebook account, Meta—or any other person—can use the Facebook Profile ID to quickly and easily locate, access, and view the user's corresponding Facebook profile. In other words, Vice's use of the Meta Pixel allows Meta to know what video content its users viewed on its website.

7. Vice users do not consent to such sharing through a standalone consent form, as required by the VPPA. As a result, Vice violates the VPPA by disclosing this information to Meta.

8. On behalf of a Class of similarly situated Vice users, Plaintiff seeks relief through this action. Based on the facts set forth in this Complaint, Vice violated the Video Privacy Protection Act ("VPPA"), the Unfair Competition Law ("UCL"), and the Consumers Legal Remedies Act ("CLRA") and is liable for unjust enrichment.

## PARTIES

### A. Plaintiff

9. Plaintiff **Denise Kramer** is a citizen and resident of Lancaster, California.

10. Plaintiff Kramer has a Vice account and provided Vice with her PII, including her name and email address when subscribing to its services.

2

11. Plaintiff Kramer has maintained a Facebook account for about 14 years and spends approximately 6 hours a day on Facebook. Plaintiff Kramer's Facebook profile includes personal information about her, including her name and other personal details.

12. Plaintiff Kramer has maintained an Instagram account for about 5 years and typically spends 2 hours per day on Instagram.

13. Plaintiff Kramer visited the Vice website using her web browser on numerous occasions to view video content.

14. Plaintiff Kramer requests and watches videos on Vice using the same browser that she uses to login to Facebook, including while she is logged in to Facebook. Plaintiff Kramer uses the same device to request and watch videos on the Vice website that she uses for Facebook and Instagram.

15. Vice sent to Meta Plaintiff Kramer's PII, including her Facebook Profile ID, as well as the title of each video she viewed without obtaining consent through a standalone consent form.

16. Plaintiff Kramer has seen targeted advertisements on Facebook after watching related videos on the Vice website.

17. Plaintiff Kramer's PII and viewing history are private and confidential in nature and assets to which no third party has a presumptive right to access without consent.

**B.     Defendant**

18. Defendant Vice is a Delaware corporation headquartered at 49 South Second Street, Brooklyn, NY 11249.

3

## JURISDICTION AND VENUE

19. This Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiff's claims under the Video Privacy Protection Act, 18 U.S.C. § 2710.

20. This Court also has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Defendant and at least one Class member are domiciled in different states.

21. This Court has general personal jurisdiction over Vice because it maintains its principal place of business in New York. Additionally, Vice is subject to specific jurisdiction in this State because it maintains sufficient minimum contacts within the State of New York and a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in this state.

22. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

**A.    Vice Disclosed Plaintiff's and Class Members' Private Viewing Information to Meta Without Their Consent.**

23. Vice owns and operates www.vice.com, a website geared towards providing articles, podcasts, and video content to users, including information on topics such as world news, technology, travel, and politics.

24. Vice provides prerecorded audiovisual content on its website, which Plaintiff requested and viewed.

25. While Plaintiff and Class members were viewing the video content they requested on Vice's website, Vice transmitted this information to Meta, the multinational technology

4

conglomerate that owns social media networks www.Facebook.com ("Facebook") and www.Instagram.com ("Instagram").

26. Vice's transmission of viewing information to Meta included the specific names of video content viewed by users, as well as the user's Facebook Profile ID, a string of numbers unique to each Facebook profile that personally identified the user.

27. Anyone who possesses a Facebook Profile ID may use this number to quickly and easily locate, access, and view the corresponding Facebook profile, which may contain a vast amount of personal information.

28. While Facebook can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of an FID. Facebook admits as much on its website. Simply put, with only an FID and the video content name and URL—all of which Defendant knowingly provides to Facebook without appropriate consent from the digital subscribers—any ordinary person could learn the identity of the digital subscriber and the specific video or media content they requested on Defendant's website.

29. Facebook profiles may contain a Facebook user's name, gender, birthday, place of residence, career, educational history, a multitude of photos, and the content of a Facebook user's posts. Facebook profiles often reveal even more sensitive personal information—for instance, posted photos may disclose the identity of family members, and written posts may disclose religious preferences, political affiliations, personal interests and more.

30. Vice transmitted the video title and Facebook Profile ID information in a single, unencrypted transmission through a non-customer facing tracking tool called a "Meta Pixel."

31. Meta Pixel is a snippet of programming code that, once installed on a webpage, sends to Meta data relating to the interactions a user takes on a particular website. Meta Pixel

5

tracks users as they navigate through the website and logs which pages are visited, buttons are clicked, and, in this case, which videos a user requested and viewed on Vice.

32. Meta Pixel is an advertising and analytics tool that allows website owners to track visitor actions on their websites and send the corresponding information to Meta. Websites use Meta Pixel to collect analytical data about how users use its website and in turn, are able to target more specific ads to their users. Meta Pixel therefore allows companies to better target advertisements, focusing on visitors who are more likely to make a purchase. Thus, Meta Pixel is installed within the code of a website, such as Vice, to increase the business's profits.

33. Meta offers its Pixel tool to websites across the internet. As of January 2022, more than 30 percent of popular websites have an embedded Meta Pixel.

34. Meta benefits from websites like Vice installing its Pixel. When Meta Pixel is installed on a business's website, the business has a greater incentive to advertise through Facebook or other Meta-owned platforms, like Instagram. In addition, even if the business does not advertise with Meta, Meta Pixel assists Meta in building more fulsome profiles of its own users, which in turn allows Meta to profit from providing more targeted ads. This data can also be used to develop and refine Meta's machine learning algorithms, including those used to serve targeted advertisements to Facebook users, and others. Meta Pixel is installed on websites all over the internet and, accordingly, provides Meta with information about its users' preferences, other distinguishing traits, and web-browsing activities outside of Meta-owned platforms.

35. Using the Meta Pixel likewise benefits Vice by providing it with analytical data about its website and improving its ability to promote its content and services to its users. For instance, the data collected through Meta Pixel is provided to Vice in Meta's Events Manager, as well as tools and analytics to reach these individuals through Facebook ads. Vice can use this

information to create "custom audiences" through Meta to target the specific Facebook user, as well as other Facebook users who match members' of the audience's criteria. Vice can also sort through the data collected by Meta Pixel to find specific types of users including, for instance, women over a certain age. Vice also profits from selling parts of their website to display advertisers.

36. Through use of Meta Pixel, Vice – in the same transmission – discloses to Meta the full name of each video a user requested and watched, together with the user's Facebook Profile ID, thus linking users' browsing activities and preferences to their Facebook profiles. In other words, this single transmission connects a user's video viewing choices with their Facebook Profile.

37. Vice violates and invades the privacy rights of users with its practice of sending their Facebook Profile IDs, together with viewing content, to Meta.

38. The VPPA requires that consent be obtained in a form "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710. Vice's website includes Terms of Use, a Privacy Policy, and a Cookie policy, among other policies, none of which operate as a standalone consent form disclosing the information shared through the Meta Pixel and requesting user consent. Accordingly, no user provided Vice with the level of consent required by the VPPA for disclosure of their viewing content and identities to Meta.

B. **Plaintiff and Class Members Suffered Harm as a Result of Vice's Privacy Violations.**

39. Vice shared Plaintiff's sensitive data with Meta, including their video viewing histories linked to their Facebook Profile IDs, which Plaintiff reasonably expected would be kept private.

40. The personal information Vice obtained from Plaintiff and Class members constitutes valuable data in the digital advertising-related market for consumer information. Vice's wrongful acquisition and use of their personal, private information deprived Plaintiff and Class members of control over that information and prevented them from realizing its full value for themselves.

41. Vice's conduct has resulted in economic harm to Plaintiff and Class members whose PII diminished in value when Vice made this information available to Meta.

42. The harms described above are aggravated by Vice's continued retention and commercial use of Plaintiff's and Class members' personal information, including their private video viewing histories.

## CLASS ALLEGATIONS

43. Plaintiff brings this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as a representative of the following Class:

> **Nationwide Class**: All persons residing in the United States who requested and viewed video content on Vice's website and were Facebook and/or Instagram users during the time Meta's Pixel was active on Vice's website, and whose personally identifiable information and viewing content was disclosed to Meta through the Meta pixel.
>
> **California Subclass**: All persons residing in California who requested and viewed video content on Vice's website and were Facebook and/or Instagram users during the time Meta's Pixel was active on Vice's website, and whose personally identifiable information and viewing content was disclosed to Meta through the Meta pixel.

44. The "Class Period" is from January 1, 2013 to the present.

45. Plaintiff reserves the right to modify, change, or expand the Class definition based upon discovery and further investigation.

46. Excluded from the Class are (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) Defendant, Defendant's subsidiaries, affiliates, parents, successors, predecessors, and any entity in which Vice or their parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendant's counsel.

**Numerosity**: The Class consists of at least hundreds of thousands of individuals, making joinder impractical.

47. **Commonality and Predominance**: Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Class include, but are not limited to:

    a. Whether Vice's use of the Meta Pixel was without user consent or authorization;

    b. Whether Vice obtained and shared or caused to be obtained and shared Plaintiff's and Class members' personal information through tracking using Meta Pixel, which Vice installed on its webpages;

    c. Whether other third parties obtained Plaintiff's and Class members' personal information as a result of Vice's conduct described herein;

    d. Whether Vice's conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.*;

    e. Whether Vice's conduct violates California consumer protection law;

    f. Whether Vice was unjustly enriched as a result of sharing users' information with Meta;

g. Whether Vice's acquisition and transmission of Plaintiff's and Class members' personal information resulted in harm; and

h. Whether Vice should be enjoined from engaging in such conduct in the future.

48. **Typicality**: Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, have been injured by Vice's misconduct—disclosing users' PII and viewing content to Meta.

49. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy protection cases. Plaintiff does not have any interests antagonistic to those of the Class.

50. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Vice to comply with federal law. Moreover, because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of Vice's financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

51. **Injunctive relief**: Vice has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## TOLLING OF THE STATUTES OF LIMITATIONS

52. All applicable statute(s) of limitations have been tolled by Vice's knowing and active concealment and denial of the facts alleged herein.

53. As alleged herein, Meta Pixel is a snippet of code not apparent to consumers from the Vice website. Plaintiff therefore never knew of Vice's misconduct.

54. Plaintiff and Class members could not have reasonably discovered Vice's practices of sharing their personal viewing content and PII with Meta until shortly before this class action litigation commenced.

55. Vice was and remains under a continuing duty to disclose to Plaintiff and Class members its practice of sharing personal viewing content and PII to Meta. As a result of the active concealment by Vice, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT
### (VIDEO PRIVACY PROTECTION ACT),
### 18 U.S.C. § 2710, *ET SEQ.*

56. Plaintiff incorporates and realleges the above factual allegations by reference.

57. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

58. As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials." Vice is a "video tape service

11

provider" as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those deliveries affect interstate or foreign commerce.

59. As defined in 18 U.S.C. § 2710(a)(3), "personally identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

60. Vice knowingly caused Plaintiff's and Class members' personal viewing information and Facebook Profile IDs to be disclosed to Meta. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and Class member to Meta as an individual who viewed Vice's content, including the specific video materials watched on Vice.

61. As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." Plaintiff is a subscriber to Vice's services which provide video content to users on its website. Thus, Plaintiff is a "consumer" under this definition.

62. As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or is given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner. Vice failed to obtain informed, written consent under this definition.

63. Additionally, the VPPA creates an opt-out right for consumers in 18 U.S.C. § 2710(2)(B)(iii). The Act requires video tape service providers to "provide[] an opportunity, in a

clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." Vice failed to provide an opportunity to opt out as required by the Act.

64. Vice was aware that the disclosures to Meta that were shared through Meta Pixel identified Plaintiff and Class members. Vice also knew that Plaintiff's and Class members' personal viewing content was disclosed to Meta because Vice programmed the Meta Pixel into its website code, knowing that Meta would receive video titles and the subscriber's Facebook Profile ID when a user watched a video.

65. By disclosing Plaintiff's and Class members' personal viewing content, Vice violated Plaintiff's and Class members' statutorily protected right to privacy in their video-watching habits. *See* 18 U.S.C. § 2710(c).

66. As a result of the above violations, Vice is liable to Plaintiff and Class members for actual damages related to their loss of privacy in an amount to be determined at trial or, alternatively, for "actual damages but not less than liquidated damages in an amount of $2,500" per violation. 18 U.S.C. § 2710(c)(2)(A). Under the Act, Vice is also liable for reasonable attorney's fees, other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury and sufficient to prevent and deter the same or similar conduct by Vice in the future.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law (the "UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On Behalf of the California Subclass)**

67. Plaintiff incorporates and reallege the above factual allegations by reference.

68. Plaintiff Kramer asserts this claim on behalf of herself and the California Subclass.

13

69. The UCL proscribes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

**Unlawful**

70. A business practice is "unlawful" under the UCL if it violates any other law or regulation.

71. Vice's business acts and practices are unlawful because they violate the Video Privacy Protection Act as set forth above. They also violate California's Consumers Legal Remedies Act, for the reasons stated below. Vice is therefore in violation of the "unlawful" prong of the UCL.

**Unfair**

72. Vice's conduct is unfair in violation of the UCL because it violates California's and the nation's legislatively declared public policy in favor of protection of consumer privacy. *See* S. Rep. No. 100-500 at 7-8 (1988) (finding that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems . . . create[s] privacy interests that directly affect the ability of people to express their opinions, to join in association with others, and to enjoy the freedom and independence that the Constitution was established to safeguard."); California Bill Analysis, A.B. 375 Assem. (June 27, 2017) (noting that "[t]he unregulated and unauthorized disclosure of personal information and the resulting loss of privacy can have devastating effects for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to the destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm.").

73. Further, Vice's conduct is unfair because it is unethical, unscrupulous, offensive, and substantially injurious. The gravity of harm resulting from Vice's unfair conduct outweighs any potential utility therefrom. The disclosure of Plaintiff Kramer's and Subclass members' personal information without obtaining their express consent through a standalone consent form raises significant privacy concerns, and any potential utility from these disclosures (such as increased Vice revenue due to more targeted advertising) is outweighed by their considerable harm to Plaintiff Kramer and the Subclass.

74. Vice's unfair business practices include disclosing Plaintiff Kramer's and Subclass members' FID and viewing content to Facebook without proper consent, causing harm to Plaintiff Kramer and Subclass members.

75. Vice actually and proximately caused harm to Plaintiff Kramer and Subclass members in that, among other things, they were deprived of control over their valuable personal information and were therefore prevented from realizing its full value for themselves.

76. For these reasons, Vice is in violation of the "unfair" prong of the UCL.

77. Plaintiff Kramer and Subclass members accordingly seek appropriate relief, including (1) restitution under the UCL; and (2) such orders or judgments as may be necessary to enjoin Vice from continuing its unfair, unlawful, and fraudulent practices. There is no adequate remedy at law that would provide redress to Plaintiff Kramer and the Subclass or ensure that Vice will not engage in the same data practices in the future. Plaintiff Kramer also seeks reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure section 1021.5.

### THIRD CLAIM FOR RELIEF
**Violation of California's Consumers Legal Remedies Act
Cal. Civ. Code § 1750, *et seq.*
(On Behalf of the California Subclass)**

78. Plaintiff incorporates and reallege the above factual allegations by reference.

79. Plaintiff Kramer asserts this claim on behalf of herself and the California subclass.

80. Vice is a "person" within the meaning of Cal. Civ. Code §§ 1761(c) and 1770, and provides "services" within the meaning of Cal. Civ. Code §§ 1671(b) and 1770.

81. Plaintiff Kramer and Subclass members are "consumers" as defined by Cal. Civ. Code §§ 1761(d) and 1770, and engaged in a "transaction," as defined by Cal. Civ. Code §§ 1761(e) and 1770.

82. Vice's acts and practices, as alleged in this complaint, violate the CLRA, Cal. Civ. Code §§ 1770(a)(5), (7), and (9), because its practice of sharing Users' FIDs and viewing content with Facebook without those users having expressly given consent in a standalone

consent form materially misled California consumers. In describing its services and privacy policies, Vice misrepresented and/or omitted the true nature of its information-sharing practices.

83. Vice's misrepresentations and omissions were material. Vice's practices implicate significant privacy concerns and caused economic harm to Plaintiff Kramer and Subclass members as alleged above.

84. Vice's CLRA violations caused Plaintiff Kramer and Subclass members to sustain ascertainable losses, to be determined according to proof at trial.

85. Plaintiff Kramer also seeks an order enjoining Vice from engaging in practices that violate the CLRA.

86. Pursuant to Cal. Civ. Code § 1782(a), on her own behalf and on behalf of the Class, Plaintiff Kramer sent a CLRA notice on August 18, 2022 via certified mail, return receipt requested, to Vice's principal place of business, advising Vice that it is in violation of the CLRA and must cease its practice of disclosing Users' personal information to third parties without appropriate consent. If Vice does not provide the relief requested within 30 days of receiving California Plaintiff's CLRA notice, Plaintiff will amend (or seek leave to amend) this complaint to add claims for monetary relief, including actual and restitutionary damages pursuant to the CLRA and punitive damages.

87. Attached as Exhibit A to this Complaint is a declaration of venue and place of trial under California Civil Code section 1780(d).

## FOURTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT

88. Plaintiff incorporates and reallege the above factual allegations by reference.

89. Vice acted wrongfully by sharing users' Facebook Profile IDs and viewing content to Meta without obtaining their express consent through a standalone consent form, as required by the VPPA.

90. Vice's practice of sharing users' personal information and viewing content with Meta without proper consent, along with its failure to disclose this practice, caused Vice to profit from advertisement revenue it would otherwise not have received.

91. Vice's retention of these ill-gotten gains is unjust and inequitable.

92. Plaintiff, on behalf of herself and the Class, accordingly seeks restitution, restitutionary disgorgement, and all other appropriate relief permitted by the law of unjust enrichment. There is no adequate remedy at law that would provide redress to Plaintiff and the Class or ensure that Vice will not deploy the same data practices in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that the Court:

A. Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

B. Enter judgment in favor of Plaintiff and the Class;

C. Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and Class members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

D. Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiff and Class members are entitled;

E. Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F. Award Plaintiff and Class members pre- and post-judgment interest as provided by law;

      G.    Enter such other orders as may be necessary to restore to Plaintiff and Class members any money and property acquired by Defendant through its wrongful conduct;

      H.    Award Plaintiff and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

      I.    Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

Dated: August 19, 2022                      Respectfully submitted,

*s/ Blake Hunter Yagman*
Blake Hunter Yagman
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Phone: (212) 594-5300
byagman@milberg.com

Gary M. Klinger (*Pro Hac Vice* to be Filed)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878 / Fax: (865) 522-0049
gklinger@milberg.com

Adam E. Polk (*Pro Hac Vice* to be Filed)
Simon Grille (*Pro Hac Vice* to be Filed)
Jessica Cook (*Pro Hac Vice* to be Filed)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
jcook@girardsharp.com