

Vicki J. Maniatis
100 Garden City Plaza, Suite 500
Garden City, New York 11530
Tel.: (865) 412-2700
vmaniatis@milberg.com

December 12, 2022

<u>Via ECF</u>

Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Kramer, et al., v. Vice Media, LLC*, No. 22 Civ. 04915-ENV-RML

Dear Judge Vitaliano:

On behalf of Plaintiffs Denise Kramer and Jennifer Gales, we write pursuant to Your Honor's Individual Rule III.A in response to the December 5, 2022 pre-letter motion ("Def. Letter") (ECF No. 23) filed by Defendant Vice Media, LLC ("Vice" or "Defendant") for its anticipated Motion to Dismiss.

Plaintiffs allege Vice violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") and state law because, as detailed in the First Amended Complaint ("FAC" or "Complaint") (ECF No. 22), Vice has and continues to knowingly disclose Plaintiffs' personally identifiable information ("PII") to a third party, Meta Platforms, Inc. ("Meta" or "Facebook"). *See* FAC ¶¶ 1–9. The VPPA prohibits video tape service providers like Vice from knowingly disclosing consumers' video-watching records ("PII") without the person having expressly given consent in a standalone consent form. *Id.* ¶ 2. This conduct also violates California's consumer protection statutes and constitutes unjust enrichment. In its Letter, Defendant raises a flurry of meritless arguments in an attempt to snuff out this important consumer protection class action in its infancy. Each of Defendant's arguments is without merit and its motion should be denied.

**I.   Plaintiffs did not waive their right to try this case as a class action.**

Defendant first argues that Plaintiffs cannot maintain a class action because, according to Vice, "they agreed to Defendant's terms and conditions containing a class action waiver." Def. Letter at 1. Waiver of the right to bring claims on a class basis is an extraordinary provision, however, and the relevant inquiry in assessing Defendant's argument is whether there was sufficient notice to the user to bind them to the contract. There wasn't. Defendant purports to bind users to its Terms through a disfavored online "sign-in wrap" agreement—users are not required or asked to click an "I agree" box, or otherwise affirmatively indicate acceptance of any of Vice's Terms. Instead, the Terms are hyperlinked in fine print at the bottom of the sign-up



page, such that a user can sign in without noticing those links.[1]  *See Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 395 (E.D.N.Y. 2015) ("*Sign-in-wrap* couples assent to the terms of a website with signing up for use of the site's services").  In contrast to the larger, far more prominent blue and red "Continue with Facebook" and "Continue with Google" click buttons located above it, the terms link below is placed next to another link to a privacy policy with both in smaller, non-bolded, non-colored type.  And Defendant did not present its terms or hyperlink to users at all after they entered its site.  Applicable case law holds such a notification procedure insufficiently conspicuous to bind reasonable users like Plaintiffs.  *See, e.g.*, *id.* at 404 (ruling that the defendant's "sign-in contract of adhesion is not binding [because the] design and content of the website . . . did not make the 'terms of use' readily and obviously available to [plaintiff]."); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 235-37 (2d Cir. 2016) (reversing holding of constructive notice of online terms, as the user "was not required to click an 'I agree' box after being presented with a list of terms" and "[t]he message itself—'By placing your order, you agree to Amazon.com's . . . conditions of use'—is not bold, capitalized, or conspicuous in light of the whole webpage.").  Vice's Terms therefore are not adequately disclosed as "[t]he hyperlink to the "'terms of use' was not in large font, all caps, or in bold.  Nor was it accessible from multiple locations on the webpage.  By contrast, the 'SIGN IN' button is very user-friendly and obvious . . . ." *Berkson*, 97 F. Supp. 3d at 404.  Thus, Vice's Terms are not enforceable.

**II.     Defendant is a "video tape service provider" under the VPPA.**

Vice, a multinational digital media and broadcasting company, readily qualifies as a "video tape service provider."  The VPPA broadly defines "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  Vice meets this definition because it is engaged in the business of delivering digital videos, which are audio-visual materials as defined by the VPPA.  FAC ¶¶ 34–35.  Indeed, courts routinely hold that companies like Vice are video tape service providers under the VPPA.  *See, e.g.*, *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22-CV-6348-AKH, 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) (finding that defendant was a "video tape service provider" under the VPPA and denying its motion to dismiss where the company's website offered prerecorded "news programs, television shows, documentaries, movies, and other audiovisual content.").

**III.    The VPPA does not infringe the First Amendment.**

Defendant also asks the Court to strike down the VPPA under the First Amendment, a sweeping request that would rewrite the contours of First Amendment to invalidate a law that has been in effect and enforced for decades and which in fact advances important First Amendment

---

[1] Defendant's current sign-up page is available at https://www.vice.com/en/create-account.  Defendant updated this page after Plaintiffs filed their initial complaint.  Previously, the fine print did not purport to bind users who sign up by email.  *See* https://web.archive.org/web/20220801004833/https://www.vice.com/en/create-account.



privacy interests. Defendant cites to a case involving the prescription-drug focused Vermont's Prescription Confidentiality Law, *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011), rather the VPPA, because no court has suggested that the VPPA infringes the Constitution. It does not: "There are many federal provisions that forbid individuals from disclosing information they have lawfully obtained. The validity of these provisions has long been assumed." *Boehner v. McDermott*, 484 F.3d 573, 578 (D.C. Cir. 2007). Courts have thus upheld the constitutionality of state laws modelled on the VPPA, rejecting arguments like Defendant's here. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 435 (S.D.N.Y. 2016) (rejecting First Amendment challenge to Michigan statute that "parallel[s]" the VPPA); *see also Boehner*, 484 F.3d at 578 n.2 (citing the VPPA for the principle that "government can limit disclosures without running afoul of the First Amendment . . . [T]hose who sell or rent video tapes or DVDs ordinarily may not reveal 'personally identifiable information concerning' their customers."). The VPPA applies only to commercial speech, and its content-neutral restrictions only prevent disclosure of private citizens' personal and confidential information, advancing the substantial government interest of protecting their constitutional right to privacy. *See Whalen v. Roe*, 429 U.S. 589, 606 (1977) (Brennan, J., concurring) ("The Court recognizes that an individual's interest in avoiding disclosure of personal matters is an aspect of the right of privacy.") (internal quotation marks and citations omitted); *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 950 (7th Cir. 2015) (affirming constitutionality of the Driver's Privacy Protection Act—"a parallel statute to the Video Privacy Protection Act," *Sterk v. Redbox Auto. Retail, LLC*, 672 F.3d 535, 538-39 (7th Cir. 2012)—as content-neutral because its "goals are 'unrelated to the content of [the regulated] expression.'").

**IV.     Plaintiffs adequately plead violations of California consumer protection law.**

Defendant contests Plaintiffs' UCL claim because "[a] plaintiff's residence alone is not sufficient to bring claims under the UCL." Def. Letter at 2. Yet, Plaintiffs alleged more than "residence alone": Plaintiff Kramer "is a citizen and resident of Lancaster, California," FAC ¶ 10, and "has been a Vice digital subscriber for several years," *id.* ¶ 17. As a regular, years-long user of Vice's website, Plaintiff repeatedly accessed Defendant's prerecorded video content from California. As for Defendant's CLRA arguments, they misstate the Complaint. *See* Def. Letter at 2, bottom paragraph. First, Defendant would have the Court believe "Plaintiffs do not allege they are 'consumers' under the CCLRA[.]" Yet Plaintiffs used Defendant's services and the Complaint *does* allege "Kramer and Subclass members are 'consumers' as defined by Cal. Civ. Code §§ 1761(d)[.]" FAC ¶ 94. Second, contrary to Defendant's fact-dependent assertion that a reasonable consumer would not be deceived, Plaintiffs plausibly allege that Defendant's "practice of sharing Users' FIDs and viewing content with Meta without those users having expressly given consent in a standalone consent form materially misled California consumers." FAC ¶ 95; *see Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) ("Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers . . . could be misled."); *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (noting this is "generally a question of fact not suited for resolution at the motion to dismiss stage."). Third, Defendant claims that Plaintiffs' allegations relating to Defendant's failure to disclose its data-sharing do not satisfy Rule 9(b). Plaintiffs have satisfied that standard because they "(1) detail the



statements (or omissions) . . . (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."); *see* FAC ¶ 95 (Vice's "practice of sharing Users' FIDs and viewing content with Meta without those users having expressly given consent" is deceptive), ¶¶ 91–100 (Vice is the speaker); ¶ 3 (Vice did not obtain consumers' consent in a standalone consent form); ¶ 7.

## V. Defendant was unjustly enriched.

Finally, Defendant incorrectly argues that Plaintiffs' unjust enrichment claim should be dismissed "because Plaintiffs entered into a contract with Defendant by agreeing to Defendant's terms of use and privacy policy" and, according to Defendant, "a plaintiff cannot recover under an unjust enrichment theory where a contract governs the subject matter of the dispute." Def. Letter at 3. Yet, New York law is clear that "[w]hen there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment." *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 531 (S.D.N.Y. 2007); *see also* Fed. R. Civ. P. 8(d)(2) (permitting pleading in the alternative). Defendant has not established that a contract governs the subject matter of the dispute, and as summarized above, Plaintiffs dispute the applicability of Defendant's Terms. *See supra* at 1–2. Plaintiffs bring no claim for breach of contract but instead assert Defendant unjustly enriched itself by engaging in the wrongful practices described in the Complaint.

Respectfully submitted,

*/s/ Vicki J. Maniatis*
Vicki J. Maniatis

Cc: All Counsel of Record (via ECF)

Affiliates/Locations | California | Georgia | Kentucky | Mississippi | New York | North Carolina | Puerto Rico | South Carolina | Tennessee | Washington | Netherlands | Portugal | United Kingdom
www.milberg.com